## In re BLACK.

(Supreme Court, Appellate Division, First Department.   May 17, 1912.)

MORTGAGES (§ 311*)—SATISFACTION—STATUTORY PROCEEDINGS.
   Real Property Law (Consol. Laws 1909, c. 50) § 322, providing that no
   mortgage shall be discharged of record unless on presentation of the
   original mortgage and a satisfaction piece, and authorizing an order of
   court dispensing with the production of the original mortgage if it has
   been lost or destroyed, and section 333, added by Laws 1911, c. 574, pro-
   viding for a discharge on the refusal of the mortgagee to give the satis-
   faction piece and surrender the mortgage, and prescribing a method of
   payment where the mortgagee cannot be served, are in pari materia, and
   the first section applies where a mortgage has been destroyed and the
   mortgagee is ready to receive payment and give a satisfaction piece, and
   in that case the mortgagor must tender payment without coupling with
   it the condition of the simultaneous delivery of the mortgage, and the
   mortgagee must tender proof of the destruction of the mortgage, and
   both parties must unite in procuring the statutory order, and the mort-
   gagor may not comply with section 333 and pay the mortgage to the
   chamberlain of the city of New York on the refusal of the mortgagee to
   furnish a satisfaction piece and the original mortgage, and then apply
   for an order discharging the mortgage of record.

   [Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 919–929; Dec.
   Dig. § 311.*]

Appeal from Special Term, New York County.

Application of Emma L. Black for an order canceling and dis-
charging a mortgage of record.   From an order directing payment of
a sum due on a mortgage to the Chamberlain of the City of New
York and on such payment directing the register of the County of
New York to mark the mortgage canceled and discharge it of rec-
ord, the party aggrieved appeals.   Modified and affirmed.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE,
SCOTT, and MILLER, JJ.

Alexander & Green, of New York City (Charles W. Pierson, of
New York City, of counsel, and William H. P. Oliver and L. A.
Doherty, both of New York City, on the brief), for appellant Equita-
ble Life Assur. Society of the United States.

Curtis, Mallet-Prevost & Colt, of New York City (Samuel Philips
Savage, of New York City, of counsel), for respondent.

CLARKE, J.   The respondent alleges in her petition that she is
the owner of certain described real estate in the city of New York,
and that on or about November 2, 1899, she duly executed her bond
for $29,250 and a mortgage securing the same, covering said prem-
ises, to one Daniel R. Kendall, which was duly recorded; that by cer-
tain assignments duly recorded said bond and mortgage were as-
signed to the Equitable Life Assurance Society; that a payment was
made on account of the principal, leaving a balance of principal due
of $20,000; that on March 12, 1912, the petitioner's attorney "pre-
sented to said Equitable Life Assurance Society of the United States,
pursuant to the provisions of chapter 574 of the Laws of 1911, a sat-

isfaction piece certifying that the mortgage had been paid, and consenting that it be discharged of record, and tendered $20,286.12 lawful money of the United States in legal tender, being the sum due upon said date for principal and interest upon said mortgage, together with the sum of 50 cents, being the fee allowed by law for taking the acknowledgment of a deed; that your petitioner's said representative then demanded that said satisfaction piece be executed and delivered, together with said mortgage; that C. J. Martin, the deputy comptroller of said Equitable Life Assurance Society of the United States, being the officer to whom said tender was made on behalf of said company refused to surrender said mortgage or the bond which the same was given to secure, stating that the same had been destroyed by fire, and that he was not able to deliver the same." Wherefore she prayed for an order canceling and discharging the mortgage of record, and directing that the sum tendered be paid to the chamberlain of the city of New York, and, upon depositing the said sum with the chamberlain, the register be directed to mark said mortgage canceled and discharged of record.

Upon this petition, an order to show cause why the relief asked should not be granted was served upon the Equitable Life Assurance Society. Upon the return to the order an affidavit of Charles J. Martin, deputy comptroller of said society, was presented, in which he averred that the society was the owner of the bond and mortgage described; that it had never been assigned by said society or in any other manner transferred or disposed of; "that on the 12th day of March said society was ready and willing to accept payment of the amount due on said bond and mortgage at that date, to wit, the sum of $20,286.12, and to execute and deliver to any person paying the same a proper certificate of satisfaction certifying to the payment thereof; that the said society was then, and is now, unable to deliver the original bond and mortgage by reason that the same had been destroyed by fire as will more fully appear by the annexed affidavits of Alfred Taggard and John B. Russell; that the said petitioner herein has at no time tendered to said society the amount due on said bond and mortgage, or offered to pay said amount due to said society, except upon the condition that said bond and mortgage be simultaneously surrendered to petitioner, which petitioner has always well known this society was unable to do."

The affidavit of Russell set forth that for 20 years last past he has been bookkeeper of the bond and mortgage department of the Equitable Life Assurance Society; that the society, to the deponent's knowledge, had said bond and mortgage in its possession at the time of the fire which destroyed the Equitable Building in this city on January 9, 1912; that to the best of deponent's recollection and belief said bond and mortgage were at the time of said fire deposited in the safe in said bond and mortgage department where papers in current use were kept; that deponent has examined the mortgage records and files of said society since the fire and contained in the society's mortgage vault, and that the bond and mortgage described in said petition cannot be found; that deponent has many times examined

the ruins of the Equitable Building in an endeavor to find the safe above mentioned in which said bond and mortgage is believed to have been at the time of the fire, and that no trace of said safe or of its contents has been found; that deponent has been informed by the firemen and building experts who have examined said ruins that said safe was in that part of the Equitable Building which experienced the greatest heat during said fire, and where destruction was most complete.

Taggard's affidavit avers that for 14 years last past he has had charge of the mortgage records of said society; that prior to the 9th of January, 1912, the society's mortgages were kept in a large vault built in the society's building at 120 Broadway, to which deponent had access; that shortly before the 9th of January, 1912, deponent removed from said vault the bond and mortgage described in said petition in order that a satisfaction piece or assignment of said bond and mortgage might be prepared in compliance with a notice from the owner of the mortgaged premises that payment of said mortgage would shortly be made; that said bond and mortgage and the accompanying papers were placed by petitioner in a safe in the bond and mortgage department of the society where it was the society's custom to keep papers in current use or papers which might have to be examined or delivered on short notice; that to the best of deponent's recollection and belief said bond and mortgage and accompanying papers were deposited in this safe at the time of the fire which destroyed the Equitable Building; that deponent has carefully examined all of the mortgage files of the society contained in its vault, and that said bond and mortgage were not among them; that deponent has many times examined the ruins of the Equitable Building in an endeavor to discover the said safe, and that said safe and its contents have never been found; and are believed to have been totally destroyed by said fire.

The controversy before this court is highly technical in its character, and is whether section 322 of the Real Property Law or section 333 of said law added by chapter 574 of the Laws of 1911 applies to the facts presented.

Section 322 provides as follows:

"In counties wholly embraced in a city of the first class, no mortgage shall be discharged of record, unless in addition to the certificate provided and required by the preceding section, there shall be presented to the recording officer for cancellation the original mortgage, or a certified copy of an order made and entered as hereinafter provided. * * * If for any reason said mortgagee, his personal representative or assign cannot produce said original mortgage, the said officer shall not discharge said mortgage until there shall be delivered to him a certified copy of an order made and entered as hereinafter provided. * * * Where the mortgage shall have been lost, mutilated or destroyed, or upon which the signature or signatures are wholly obliterated or removed, any person having an interest in securing the discharge of the same may apply to the Supreme Court or the County Court in or of the county in which property affected by the mortgage, or any part thereof, is situated, upon a petition duly verified, containing the name and address of the property covered by the mortgage, the name and address of the owner of the bond and mortgage, to the best of the petitioner's knowledge and belief, and the owner thereof as appears of record, a full description of the mortgage and of any assignments thereof that may appear

upon the record, including the names of the mortgagor, mortgagee, assignor, assignee, date, amount and the place, book, page and time of record of said mortgage and any assignments thereof, and a description of the property affected thereby and showing the loss, mutilation or destruction of the mortgage, or obliteration or removal of the signature or signatures thereon or therefrom, and the interest of the petitioner in the property or the mortgage, for an order dispensing with the production of the said mortgage and directing the discharge thereof. * * * Upon the return day of such notice or order to show cause, the court, upon due proof of service of the notice, or order to show cause, upon the parties above specified, and on further proof of the identity of the person presenting the petition, shall inquire, in such manner as it may deem advisable, into the truth of the facts set out in the petition, and upon proof satisfactory to the court that said mortgage has been lost, mutilated or destroyed, or that the signature or signatures have been obliterated or removed thereon or therefrom, and as to the identity of the mortgagee, his personal representatives and assigns, and such other proof in relation thereto as to the court may seem desirable, the court shall make an order dispensing with the production of the mortgage and directing its cancellation of record, as hereinabove provided. In case the mortgagee, his personal representatives or assigns, shall not appear in court upon the return of said notice or order to show cause, or shall refuse or neglect, if present, to give the certificate for discharge above specified, the court may direct the amount due upon said bond and mortgage to be paid to the officer specified by law to hold court funds and moneys deposited in court in the county wherein the mortgaged premises are situated in whole or in part, and the mortgage to be canceled of record in all counties wherein any of the lands affected by said mortgage are situated upon the production of a certified copy of the order and the receipt of such officer showing that the amount of said mortgage has been deposited with him, which receipt shall be a substitute for the certificate of discharge above specified. If, in the proceedings had under and in pursuance of this section, it shall appear to the satisfaction of the court that the principal sum and interest due upon said mortgage, or the bond accompanying the same has been fully paid, then the said deposit of money hereinabove provided for shall be dispensed with. The money deposited shall be payable to the mortgagee, his personal representatives or assigns, upon an order of the Supreme or County Court directing the payment thereof to him, made upon such evidence as to his right to receive the same, as shall be satisfactory to the court."

This statute, it will be perceived, provides that no mortgage shall be discharged of record unless upon the presentation of the original mortgage and a satisfaction piece, and, in case that the mortgage has been lost, mutilated, or destroyed, provides for an order which shall take the place of the mortgage upon production of which the register is authorized to cancel the mortgage of record.

In terms this statute exactly meets the facts in this case. The mortgage had been destroyed, the mortgagee was ready to receive payment, and to give a satisfaction piece. If both parties had co-operated, instead of standing stiffly upon what they claimed to be their technical rights, the mortgagor would have tendered payment without coupling it with the condition of the simultaneous delivery of the mortgage with which condition it was impossible for the mortgagee to comply as the mortgagor knew, and the mortgagee would have rendered the proof, which it has now furnished, sufficient to satisfy the statute and procure cancellation, and both parties would have united in procuring the necessary order which, under the facts shown, could have been obtained without delay or difficulty.

But the mortgagor claimed that section 333 of the Real Property

·Law, added by chapter 574 of the Laws of 1911, and which did not in terms repeal said section 322, governed. Said section provides as follows:

"Sec. 333. 1. Upon the request of the mortgagor or of any other person interested in the mortgaged premises made at any time, that payment thereof is entitled to be made and upon presentation of a satisfaction piece cer-,tifying that the mortgage has been paid or otherwise satisfied and discharged,. and consenting that it be discharged of record, and upon tender of payment of the sum or sums due as principal and interest upon the mortgage or upon the debt or obligation secured thereby, together with the fees allowed by law for the taking of an acknowledgment of a deed, a mortgagee of real property situate in this state, must execute and acknowledge before a proper officer, in like manner as to entitle a conveyance to be recorded, such satisfaction piece, and thereupon deliver the same and the mortgage to the person making such tender of payment as aforesaid. (2) Upon the failure or refusal of any such mortgagee to comply with the foregoing provisions of this section any person having an interest in the mortgage or the debt or obligation secured thereby, or in the mortgaged premises, may apply to the Supreme Court or a justice thereof, or to a County Court or a judge thereof, in or of any county in which the mortgaged premises or any part thereof are situated in whole or in part, upon a petition, for an order to show cause why an order should not be made by such court canceling and discharging the mortgage of record, and directing the register or clerk of any county in whose office the same may have been recorded, to mark the same upon his records as canceled and discharged, and further ordering and directing that the debt or obligation secured by the mortgage be canceled, upon condition that the sums. tendered pursuant to the foregoing provisions of this section to be paid to the officer specified by law to hold court funds and moneys deposited in court in the county wherein the mortgaged premises are situated in whole or in part. * * *"

Paragraph 3 provides for the case where an actual tender cannot with due diligence be made within this state:

"5. Upon the return day of such order to show cause, the court, upon proof of due service thereof and on proof of the identity of the mortgagee and of the person presenting the petition, shall inquire in such manner as it may deem advisable into the truth of the facts set forth in the petition, and in case it shall appear that said principal sum or any unpaid balance thereof and interest and the said fees allowed by law have been tendered but not accepted and said satisfaction piece has been duly presented for execution, or that such tender and presentation could not have been made within this state with due diligence, then the court shall make an order directing the sums so tendered, or in a case where such tender could not have been made as aforesaid, directing the principal sum or any unpaid balance thereof, with. interest thereon to the date of entry of said order and the aforesaid fees allowed by law, be paid to the officer specified by law to hold court funds and moneys deposited in court in the county wherein the application herein is. made, and directing and ordering that upon such payment the debt or other obligation secured by the mortgage be canceled. * * * The money deposited shall be payable to the mortgagee, his personal representative or assigns,. upon an order of the Supreme Court or County Court directing the payment thereof to him upon such evidence as to his right to receive the same as shall be satisfactory to the court."

This statute says nothing about a lost, destroyed, or mutilated mortgage. It takes effect upon the failure or refusal of the mortgagee to give the satisfaction piece and surrender the mortgage. It further furnishes a method of payment where the mortgagee cannot be served. The mischief it attempts to cure is willful neglect or refusal, while section 322 covers the case of inability. One provides a rem-

edy against the contumacious—the other the unfortunate.    The later act is not in conflict with, nor has it repealed expressly or impliedly, the former.    Both are in pari materia, and are to be construed as equally effective, applicable to different situations.

In the case at bar the mortgagee did not refuse to accept payment, execute a satisfaction piece, and deliver the mortgage.    It was ready and willing to receive payment and execute the satisfaction piece.    It was unable to deliver the mortgage because it had been destroyed.    It should not be required to seek the payment of its debt at the hands of the chamberlain with the inevitable consequence of loss of interest and the payment of fees.    Nor has the mortgagor in good faith complied with the statute, for it has not made a valid tender, but one coupled with a condition it knew impossible of performance.

We think the order was wrong, but we are of opinion, as all of the facts are before the court, that we should now direct the proper order to be entered, which is that upon payment to the mortgagee of the principal sum due upon the mortgage, with interest to the time of payment, and the execution by the mortgagee of a satisfaction piece, the production of the mortgage is dispensed with, having been shown to have been lost or destroyed, and that the register, upon the presentation of the satisfaction piece and a certified copy of the order to be entered hereon, cancel said mortgage of record and make the appropriate entries in his books as required by law, and the order so modified is affirmed, without costs to either party.    All concur.

---

## MURPHY v. DELAWARE & H. CO.

(Supreme Court, Appellate Division, Third Department.    May 8, 1912.)

BRIDGES (§ 35*)—HIGHWAY BRIDGE OF RAILROAD TRACKS—INJURY TO PEDESTRIAN—LIABILITY OF RAILROAD.

Under Railroad Law (Laws 1890, c. 565) § 64, as amended by Laws 1909, c. 153, requiring a municipality to put in proper repair a highway bridge over a railroad track, or to serve notice on the railroad company requiring it to repair, the company, in the absence of such notice, is not liable for injury to a pedestrian caused by a defect in a sidewalk forming a part of the roadway of such bridge.

[Ed. Note.—For other cases, see Bridges, Cent. Dig. §§ 80, 96, 98, 109; Dec. Dig. § 35.*]

Betts, J., dissenting.

Appeal from Trial Term, Washington County.